STATE EX REL. CRONKHITE, Petitioner, vs. BELDEN, Circuit Judge, Respondent.

*December 11, 1926—June 20, 1927.*

*Constitutional law: Service of process on nonresident automobile drivers: Validity of statute: Discriminatory feature as to continuances: Invalid part separable from remainder of act: Nonresidents using special privileges subject to state laws: Making service upon secretary of state: Adequacy: Appearance: Before foreign magistrate to take depositions: Not waiver of objection to jurisdiction.*

1. The provision of sub. (3), sec. 85.15, Stats., limiting continuances to be granted nonresident defendants in cases growing out of the operation of a motor vehicle on state highways, is invalid as discriminating against the nonresident, there being no such limitation on resident litigants; but this invalid part of the act is separable, and the remainder of the act can stand if otherwise valid. pp. 149, 150.
2. The state may stop a foreign motorist at its boundaries and require him, as a condition of operating his motor vehicle on the highways of the state, to pay a reasonable license fee, and may prescribe that service be made upon him in controversies arising out of the operation of his motor vehicle within the state by serving process upon the secretary of state. p. 153.

3. Though constitutional rights may not be subordinated to administrative convenience, a nonresident coming within the state and using the special facilities provided by the state may be subjected to the jurisdiction of the state in respect to a violation of state laws, and may be compelled to respond in damages for wrongs done within the state in the operation of his automobile.   p. 156.

4. A law providing for jurisdiction over a nonresident motorist for acts done within the state must be reasonably calculated to give the defendant notice that the jurisdiction of a court of the licensing state has been invoked.   p. 157.

5. Sec. 85.15, Stats., providing for service of process on a nonresident by serving a copy on the secretary of state and mailing a copy of the pleadings to his last known address, is calculated to give the defendant adequate notice of the pendency of the proceeding and full opportunity to be heard in his defense.   p. 157.

6. Said sec. 85.15 requires the plaintiff to ascertain at his peril the last known address of the defendant as a matter of fact, and failure to do so renders the service of process invalid.   p. 158.

7. The appearance of the nonresident motorist before a master in chancery of the foreign state in response to a subpoena for the purpose of taking his deposition does not amount to a general appearance in the action so as to waive the right to object to the jurisdiction of the court, as an appearance by the defendant, to constitute a general appearance and a waiver of objection to the jurisdiction of the court, must be in the action, and may be by entry of record, by motion, plea, or answer filed, by stipulation, or in like manner.   p. 158.

8. A proceeding before a master in chancery in Illinois for the purpose of taking a deposition to be used in an action in Wisconsin derives its force from the laws of Illinois alone, and gives the master no jurisdiction to determine whether the action was properly instituted in Wisconsin under the laws of that state.   p. 158.

ESCHWEILER, J., dissents.

THIS IS AN ORIGINAL ACTION begun in this court by petition.   The petitioner, who resides in the city of Chicago, Illinois, was named defendant in an action begun in the circuit court for Kenosha county, Wisconsin, entitled Mary Julius, Plaintiff, vs. A. C. Cronkhite, Defendant, and in a second action entitled Charles H. Julius, Plaintiff, vs.

A. C. Cronkhite, Defendant.    The relief sought in the actions wherein Mary Julius and Charles H. Julius were plaintiffs was compensation for damages arising out of an automobile collision which occurred in Kenosha county, Wisconsin, on the 21st day of June, 1925.   The plaintiffs in said actions attempted to make service of the summons and complaint upon the defendant in those actions, the petitioner here, by complying with the provisions of sub. (3) of sec. 85.15, Stats. 1925.   That statute was fully complied with, and in addition thereto the plaintiffs in the actions begun in the circuit court for Kenosha county caused copies of the summons and complaint to be served upon the defendant therein, the petitioner here, personally.   On the 23d day of February, 1926, Cornelius J. Harrington, master in chancery of the superior court of Cook county, state of Illinois, issued subpœnas in each of the above entitled actions commanding *A. C. Cronkhite,* the petitioner here, to appear before him on the 3d day of March, 1926, at 2 o'clock p. m., then and there to be examined adversely at the instance of the plaintiffs in said actions.   It further appears that at the time and place named in the subpœnas, *A. C. Cronkhite* appeared in person, accompanied by two attorneys, Eugene P. Kealy, Esq., of the Chicago bar, and Vilas H. Whaley, Esq., of the Racine bar.   No appearance was entered for Mr. Whaley.   He requested that Mr. Kealy be entered as appearing for the defendant, *A. C. Cronkhite.*   The defendant entered an objection to the jurisdiction of the court, but continued his appearance, made objections to questions put to the witnesses, moved to strike out answers, and at the close of the deposition entered into a stipulation waiving the signature of the witness to the deposition.

On March 13, 1926, an order was issued at the instance of *A. C. Cronkhite,* by a court commissioner of Kenosha county, to show cause on the 15th day of March, 1926, why an order should not be entered setting aside and va-

cating the attempted service of the summons and complaint in each of the actions hereinbefore referred to. Said motion was brought on for a hearing and the motion was denied, the trial court being of the opinion that the service of the summons and complaint in each action was valid.

The relief sought in the action here is, that a writ of prohibition issue from this court directed to the circuit court for Kenosha county restraining that court from proceeding further in each of said actions. Other material facts will be stated in the opinion.

For the petitioner there were briefs by *Whaley, Erikson & Paulsen* of Racine, attorneys, and *Wheeler P. Bloodgood* and *Albert K. Stebbins,* both of Milwaukee, of counsel, and oral argument by *Mr. Martin R. Paulsen, Mr. Vilas H. Whaley,* and *Mr. Stebbins.*

For the respondent there was a brief by *Buckmaster & Hammond* of Kenosha, and oral argument by *Walter W. Hammond.*

A brief was also filed by *Herman L. Ekern,* attorney general, and *J. E. Messerschmidt,* assistant attorney general, as *amici curiæ;* and the cause was argued orally by *Mr. Messerschmidt.*

The following opinions were filed January 12, 1927:

RosenBERRY, J. The primary question raised in this case is the validity of sec. 85.15, sub. (3), Statutes of 1925. That section provides:

"The use and operation by a nonresident of a motor vehicle over the highways of Wisconsin shall be deemed an appointment by such nonresident of the secretary of state to be his true and lawful attorney upon whom may be served all legal processes in any action or proceeding against him, growing out of such use or operation resulting in damage or loss to person or property, and said use or operation shall be a signification of his agreement that any such process against him which is so served shall be of the same legal

State ex rel. Cronkhite v. Belden, 193 Wis. 145.

force and validity as if served on him personally. Service of such process shall be made by serving a copy upon the secretary of state or by filing such copy in his office, together with a fee of two dollars, and such service shall be sufficient service upon the said nonresident; provided, that notice of such service and a copy of the process are within ten days thereafter sent by mail by the plaintiff to the defendant, at his last known address, and that the plaintiff's affidavit of compliance herewith is appended to the summons. The court in which the action is pending may order such continuances as may be necessary to afford the defendant reasonable opportunity to defend the action, not exceeding ninety days from the date of the filing of the action in such court. The fee of two dollars paid by the plaintiff to the secretary of state at the time of the service shall be taxed in his costs if he prevails in the suit. The secretary of state shall keep a record of all such processes which shall show the day and hour of service."

The statute is assailed upon the ground that it violates the doctrine laid down in *Pennoyer v. Neff* (1877), 95 U. S. 714, because it enables a resident of the state of Wisconsin to secure a valid personal service upon a person residing and remaining beyond the territorial limits of the state of Wisconsin; second, that if it be held valid in other respects it is discriminatory, in that it denies to nonresidents upon whom service has been made under the statute the equal protection of the laws, in that it limits the time during which continuances may be granted to ninety days from the date of the filing of the action in the court in which it is begun, whereas resident litigants are not so limited, their right to a continuance resting solely in the discretion of the court.

We shall dispose of the second proposition first. It seems quite clear that the provision of the statute limiting continuance to ninety days cannot stand. It is discriminatory and denies to nonresidents rights and privileges enjoyed by residents under the same or similar circumstances upon no other ground than that they are nonresidents. The courts of Wis-

consin having once obtained jurisdiction of the person of a nonresident defendant, we perceive no reason why his right to a continuance should rest upon different grounds than the rights of residents. It must be held invalid. *Ballard v. Hunter* (1907), 204 U. S. 241, 27 Sup. Ct. 261. However, if that clause be stricken out, what remains makes a consistent workable scheme for carrying out the principal legislative purpose. The ninety-days provision cannot be considered as an inducement for the enactment of the remainder of the statute, and the provision must be held separable and the remainder of the act may stand provided it is in other respects a valid enactment. *Lynch v. Steamer Economy,* 27 Wis. 69; *State ex rel. Williams v. Sawyer County,* 140 Wis. 634, 123 N. W. 248.

It is argued with much skill and persuasiveness that the statute is in violation of constitutional· limitations as laid down in *Pennoyer v. Neff, supra.* It is there said:

"Where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam,* constructive service in this form upon a nonresident is ineffectual for any purpose. Process from the tribunals of one state cannot run into another state, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the state where the tribunal sits cannot create any greater obligation upon the nonresident to appear. Process sent to him out of the state, and process published within it, are equally unavailing in proceedings to establish his personal liability."

It is argued that this proposition is further supported by *Flexner v. Farson* (1918), 248 U. S. 289, 39 Sup. Ct. 97. In that case a personal judgment was rendered in Kentucky against two nonresident partners doing business in that state. Service of process was not made upon them personally but upon an agent in charge of their business in Kentucky, in accordance with the terms of a statute permitting such service. It was argued by counsel for the plaintiff in that case that

State ex rel. Cronkhite v. Belden, 193 Wis. 145.

defendants, by voluntarily coming within the state to do business, consented to be bound by service made in accordance with the provisions of the Kentucky statutes. The court said:

"It is argued that the pleas tacitly admit that Washington Flexner was agent of the firm at the time of the transaction sued upon in Kentucky, and the Kentucky statute is construed as purporting to make him agent to receive service in suits arising out of the business done in that state. On this construction it is said that the defendants, by doing business in the state, consented to be bound by the service prescribed. The analogy of suits against insurance companies based upon such service is invoked. *Mutual Reserve Fund Life Asso. v. Phelps,* 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987. But the consent that is said to be implied in such cases is a mere fiction, founded upon the accepted doctrine that the states could exclude foreign corporations altogether, and therefore could establish this obligation as a condition to letting them in. *Lafayette Ins. Co. v. French,* 18 How. 404, 15 L. Ed. 451; *Pennsylvania F. Ins. Co. v. Gold Issue M. & M. Co.* 243 U. S. 93, 96, 37 Sup. Ct. 344, 61 L. Ed. 610, 616. The state had no power to exclude the defendants, and on that ground, without going farther, the supreme court of Illinois rightly held that the analogy failed, and that the Kentucky judgment was void." See, also, *Baker v. Baker, Eccles & Co.* 242 U. S. 394, 37 Sup. Ct. 152.

We should find it very difficult to answer the arguments of plaintiff's counsel here were it not for *Hendrick v. Maryland,* 235 U. S. 610, 35 Sup. Ct. 140, and *Kane v. New Jersey* (1916), 242 U. S. 160, 37 Sup. Ct. 30. The New Jersey automobile law of 1908 provided in substance that no person, whether a resident or nonresident of the state, should drive an automobile upon a public highway unless he had been licensed so to do and the automobile had been registered under the statute; and also that a nonresident owner should appoint the secretary of state his attorney upon whom process may be served "in any action or legal proceeding caused by the operation of his registered motor vehicle within that

state against such owner." The statute fixed the driver's license fee for cars of less than thirty horse power at $2 and more than thirty horse power at $4. It fixed the registration fee at $3 for cars of not more than ten horse power; $5 for those from eleven to twenty-nine horse power, and $10 for those of thirty or greater horse power. The proceeds of the license fees were applied first to the maintenance of the motor vehicle department and then to the improvement of highways. Penalties were prescribed for using the public highways without complying with the statute. Kane, a resident of New York, had been duly licensed as a driver under the laws of both New York and New Jersey; he had registered his car in New York but not in New Jersey; he had not filed with the secretary of state of New Jersey the prescribed instrument appointing that official his attorney upon whom process might be served. When arrested he was on his way from New York to Pennsylvania. Kane contended that the statute was invalid as to him, a nonresident, because it violated the constitution and laws of the United States regulating interstate commerce and also because it violated the Fourteenth amendment. Both contentions were overruled, he was convicted, and the conviction affirmed. See *Kane v. State,* 81 N. J. L. 594, 80 Atl. 453, L. R. A. 1917 B, 553. Kane having been arrested within the state of New Jersey, the question presented here was not before the court in that case. The court held that under *Hendrick v. Maryland,* 235 U. S. 610, 35 Sup. Ct. 140, the power of a state to regulate the use of motor vehicles on its highways extended to nonresident as well as resident motorists; that it includes the right to exact compensation for special facilities afforded as well as reasonable provisions to insure safety. Speaking of reciprocal legislation, the court said:

"But it is not an essential of valid regulation. Absence of it does not involve discrimination against nonresidents;

for any resident similarly situated would be subjected to the same imposition."

The court quoted with approval the following conclusion from *Hendrick v. Maryland, supra:*

"In the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others."

And it was further held that the fact that the prescribed fee produced an amount largely in excess of the cost of administering the law, and was therefore a revenue act, did not make it invalid. It is established that a state may, in the exercise of its constitutional power, stop a foreign motorist at its boundaries and require him, as a condition of operating his motor vehicle upon the highways of the state, to pay a reasonable license fee, and as to controversies arising out of the operation of his motor vehicle within the state consent to be sued in the licensing state. While *Flexner v. Farson, supra,* holds that implied consent is based upon the power of the state to exclude and that without such power the fiction of consent cannot be indulged, we do not think it was intended by that decision to limit or overrule another line of cases in which it was held that power to regulate may also be a basis of jurisdiction over a nonresident, as held in *Kane v. New Jersey.* See *Davis v. Farmers Co-operative E. Co.* (1923), 262 U. S. 312, 316, 43 Sup. Ct. 556. The statute under consideration in *Flexner v. Farson* was not designed to regulate or affect the conduct of a nonresident. It made the mere presence of an agent in the state transacting business a basis of jurisdiction.

May a state provide that the voluntary entrance upon the highways of the state by a foreign motorist with his motor vehicle shall operate as a constructive consent to be sued within the state and to an appointment of the secretary of

State ex rel. Cronkhite v. Belden, 193 Wis. 145.

state as his attorney in fact upon whom service may be made in controversies arising out of the operation of his motor vehicle within the state? The supreme judicial court of Massachusetts, having under consideration a somewhat similar statute, reached the conclusion that a state might enact such a law and that it violated none of the constitutional guaranties. We shall not elaborate upon the reasons given by the Massachusetts court for its conclusion, in which we concur. *Pawloski v. Hess,* 250 Mass. 22, 144 N. E. 760, 35 A. L. R. 945. See, also, an interesting and helpful analysis of the cases by A. W. Scott, 39 Harvard Law Review, 563, under the title "Jurisdiction Over Nonresident Motorists."

While the decision in the Massachusetts case rests upon the implied consent of the motorist, we see no reason why it may not, as Mr. Scott suggests, be supported upon another theory. In *Smolik v. Philadelphia & R. C. & I. Co.* 222 Fed. 148, Judge LEARNED HAND, in speaking of implied consent by a foreign corporation, said:

"When it is said that a foreign corporation will be taken to have consented to the appointment of an agent to accept service, the court does not mean that as a fact it has consented at all, because the corporation does not in fact consent; but the court, for purposes of justice, treats it as if it had. It is true that the consequences so imputed to it lie within its own control, since it need not do business within the state, but that is not equivalent to a consent; actually it might have refused to appoint, and yet its refusal would make no difference. The court, in the interests of justice, imputes results to the voluntary act of doing business within the foreign state, quite independently of any intent."

It is frequently said in the cases following *Flexner v. Farson* that the power of the state to impute legal consequences to an intentional act which the nonresident actor did not intend it should have, rests upon the power to prohibit entirely the doing of the act. This statement seems rather broader than the cases warrant.

In *International Harvester Co. v. Kentucky,* 234 U. S. 579, 34 Sup. Ct. 944, it was hèld that a foreign corporation doing a strictly interstate business and which could not for that reason be prohibited from coming within the state, nevertheless by the transaction of such interstate business was doing business within the state and was therefore subject to the jurisdiction of the state. The right of a nonresident motorist to drive an automobile on the highways of Wisconsin is afforded no higher or greater constitutional protection than is the right of a foreign corporation to transact interstate business within the state of Kentucky. If the doing of business in the one case may subject the foreign corporation to the laws of the state by way of substituted service where there has in fact been no consent, we perceive no reason why the driving of an automobile by a nonresident upon the highways of the licensing state may not have a like consequence. In *International Harvester Co. v. Kentucky* there was a substituted service. The company had expressly revoked the authority it had theretofore conferred upon a resident of that state to receive service and had limited itself to the transaction of a strictly interstate business; yet because it was doing business—interstate business within the state—the state of Kentucky could designate the person acting for the corporation and engaged in carrying on its interstate business as a proper person upon whom service might be made, and service made in accordance therewith was held valid. See *International Harvester Co. v. Comm.* (1912), 147 Ky. 655, 145 S. W. 393.

If the state may designate a person who falls within certain categories, but has in fact no authority from his principal to receive service, as a proper person upon whom service may be made, we see no reason why it may not likewise designate a public official as such person. The defendant no more consents in the one case than in the other. The statute does not attempt to provide a method for securing jurisdic-

tion over the person of the defendant in respect to controversies other than those which arise out of the operation of the automobile within the state. While it is true that constitutional rights may not be subordinated to administrative convenience, we perceive no just reason why a nonresident coming within the state, using the special facilities provided by the state and afforded the protection of its laws, may not be subjected to the jurisdiction of the state in respect to acts done by him in violation of its law and be compelled to respond in damages for wrongs done its citizens while within the state in the operation of his automobile.

But it is argued that if the Massachusetts act be valid, sec. 85.15, sub. (3), is still invalid because it charges the secretary of state with no responsibility for conveying to the defendant whose agent he is, any knowledge or information as to the service of process upon him. The provisions of the Massachusetts statute in that respect were as follows:

"Service of such process shall be made by leaving a copy of the process with a fee of two dollars in the hands of the registrar, or in his office, and such service shall be sufficient service upon the said nonresident; provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff to the defendant, and the defendant's return receipt and the plaintiff's affidavit of compliance herewith are appended to the writ and entered with the declaration."

The Wisconsin statute provides:

"Service of such process shall be made by serving a copy upon the secretary of state or by filing such copy in his office, together with a fee of two dollars, and such service shall be sufficient service upon the said nonresident; provided, that notice of such service and a copy of the process are within ten days thereafter sent by mail by the plaintiff to the defendant, at his last known address, and that the plaintiff's affidavit of compliance herewith is appended to the summons."

State ex rel. Cronkhite v. Belden, 193 Wis. 145.

(We regard the service by the plaintiff upon the defendant of a copy of the summons and complaint in the state of Illinois, such service not being required by the statute, as a fact that has no legal consequence so far as the present controversy is concerned.)

Whether a law which made no provision for giving the defendant actual notice as distinguished from the notice which he receives by substituted service upon his representative would be so little calculated to apprise the defendant of the true state of affairs as to be on that account unreasonable and void, we are not called upon to determine. While the power to regulate the conduct of the foreign motorist may constitutionally be made the basis of acquiring jurisdiction over his person, the law as a whole must be one reasonably calculated to give the defendant notice that the jurisdiction of a court of the licensing state has been invoked. In the case of foreign corporations, service on a duly authorized representative is service upon the principal, and if made in accordance with the law is legally equivalent to personal service upon the defendant.

In *Flexner v. Farson, supra,* it is held that the fiction of consent cannot be invoked as against an individual because the state has no power to prohibit the individual from coming within its jurisdiction. But as already intimated, power to prohibit is not the sole basis of jurisdiction. Power to regulate is a basis of jurisdiction of equal dignity, and if as an incident to the exercise of that power the licensing state requires the foreign motorist to submit himself to the jurisdiction of the state and provides for service upon him in a manner reasonably calculated to bring home to him notice of the pendency of the suit, the regulation is reasonable and valid. *Kane v. New Jersey, supra.*

The law as enacted is calculated to give the defendant adequate notice of the pendency of the proceeding. We

know of nothing more likely to apprise the defendant of the pendency of the action than the mailing of a copy of the summons and complaint to his last known address. This must mean not his last address known to the plaintiff, but plaintiff is required to ascertain at his peril the last known address of the defendant as a matter of fact, and his failure to do so will amount to a failure to comply with the statute and render the service invalid.

On behalf of the respondent it is argued that the appearance before the master in the state of Illinois amounted to a general appearance in the action and a waiver by petitioner of his right to object to the jurisdiction of the court. Petitioner came before the master in response to a subpœna which he was bound to obey. The tribunal in which he appeared had no jurisdiction to do anything else than to proceed to take the deposition of the witness. Appearance in such a tribunal under such circumstances cannot amount to a general appearance. The appearance must be in the action, and it may be by entry of record, by motion, plea or answer filed, by the making of a stipulation therein, and no doubt in other ways. Here the appearance was not in the action and did not amount to a general appearance. *White v. White,* 66 W. Va. 79, 66 S. E. 2, 24 L. R. A. n. s. 1279; *Bentz v. Eubanks,* 32 Kan. 321, 4 Pac. 269.

The proceeding in the tribunal in Illinois derived its vitality and force not from the laws of Wisconsin but from the laws of the state of Illinois. As a matter of courtesy one jurisdiction lends its aid to the other in securing the testimony of a witness for use in the courts of the state where the action is pending. No action was then pending in the state of Illinois, and the tribunal of Illinois had no jurisdiction to determine whether or not an action had been properly instituted in Wisconsin under the laws of that state. No such question was presented to it and no such question could be presented to it under the circumstances of this case.

State ex rel. Cronkhite v. Belden, 193 Wis. 145.   Dissent.

There was therefore no tribunal in the state of Illinois to which the defendant could submit himself so as to give a court of the state of Wisconsin jurisdiction over his person.

We conclude, therefore, that the provision of sec. 85.15, sub. (3), limiting continuance to ninety days, is discriminatory and for that reason invalid; that the invalid part is separable and that the remainder of the act can stand if otherwise valid; that the state has power to regulate the conduct of a foreign motorist using the highways of the state of Wisconsin, and as a proper part of such regulation may prescribe that service may be made upon him in controversies arising out of his operation of his motor vehicle within the state of Wisconsin by serving process upon the secretary of state; that the statute is well calculated to give actual notice to the defendant and afford him full opportunity to be heard in his defense; that the appearance of the petitioner and his attorneys before the master in chancery in the state of Illinois did not amount to a general appearance in the action.

*By the Court.*—The motion for the issuance of a writ of prohibition is denied.

ESCHWEILER, J. (*dissenting*).   Jurisdiction over the person of the petitioner, a resident of Illinois, is asserted to now exist in the circuit court for Kenosha county, this state, by virtue of compliance with sub. (3) of sec. 85.15, Stats. (created by ch. 94, Laws of 1925), by Charles H. Julius and Mary Julius, his wife, residents of said county.

Petitioner assails the constitutionality of such statute on the grounds, among others, that it violates certain rights and privileges guaranteed and secured to him as a citizen of a sister state by the federal constitution, viz. by art. IV, sec. 2,—"the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," and by the Fourteenth amendment, which denies to each state the power to make or enforce any law abridging the

privileges or immunities of citizens of the United States; to deprive any person of liberty or property without due process of law; to deny equal protection of the laws to any person within its jurisdiction.

This statute is directed at nonresidents only, at such nonresidents who operate on the highways in Wisconsin private motor vehicles only, and provides for process against such, but only in actions for thereby causing damage or loss to persons or property. It also would undoubtedly permit the bringing of actions in this state by persons injured here, though nonresidents. The use by a nonresident of such motor vehicle on the Wisconsin highways is declared to be an appointment by him of the secretary of state as his attorney for service of all legal processes in any such action, and with the same effect as if personally served. The secretary of state is required to keep a record of all such processes, but there his duties and functions end. Though made the agent of such nonresident for service, he is not required in any manner to give any notice to or perform any act for such principal. Agency implies mutual duties and obligations, but here his agency for such a nonresident is the merest shadow; he has absolutely no part to play in that which is essential in "due process," namely, the giving of notice to the one concerned. In verity he is agent for plaintiff if for any one.

So far as actual notice is concerned, this statute would be just as effective without this provision. Yet without some such ceremony as service on the secretary of state no one could possibly contend that the other provision of the statute authorizing the party plaintiff to mail summons and complaint to a defendant without the state could be sufficient to confer jurisdiction *in personam* over such nonresident. *Moyer v. Koontz*, 103 Wis. 22, 24, 79 N. W. 50; *McDonald v. Mabee*, 243 U. S. 90, 37 Sup. Ct. 343. So we have here, in effect, a finding of a valid whole made up of two parts and one wholly ineffectual and one wholly invalid.

It may be safely asserted, I take it, that so long as a citizen of Wisconsin can lawfully operate motor vehicles on our highways this state cannot prohibit an Illinois citizen from so using them, nor could it exact a higher rate of gasoline tax or a higher automobile license fee from him without being in plain violation of the federal constitution. That private motor vehicles, registered in some other jurisdiction but operated here, are relieved by sub. (1) of the same sec. 85.15 from the license fee required of residents, and that such has been continually the law since the first such license law, ch. 305, Laws of 1905, is here immaterial. In no way can it be contended that this attempted making of a state official an agent for personal service on a nonresident is bottomed upon the waiver by the state of its undoubted power to require all such vehicles to pay a license fee. Its waiver of such right to exact a fee is a courtesy, not a consideration.

In order to obtain jurisdiction to enter a personal judgment against a resident or against a nonresident while within this state, *personal* service is required. In the absence of such service any attempt at a judgment is a nullity. *Western P. & M. Co. v. American M. S. Co.* 175 Wis. 493, 185 N. W. 535. Such service must be (secs. 262.07, 262.08, formerly secs. 2635, 2636) by delivery of a copy of the process to the individual or, he not being found, by delivery to some member of his household to whom its contents must be explained, and this service must be by *one not a party* to the action. All this is for the purpose of giving in a substantial and safe manner actual, *bona fide* notice to a party sought to be sued; if it cannot be so given there can be no valid service.

That the method provided for by this statute (and expressly requiring, as it does, service to be made by the *plaintiff* himself) to reach the same end, viz. jurisdictional service, for which due notice is of the essence, is essentially and substantially different, much less rigorous, with fewer

safeguards, and more susceptible of abuse and more completely within the control of the plaintiff than that required by our statute for the resident, or transient presently within our jurisdiction, is too plain to need discussion.    Just so much as it falls short of substantial equivalency with statutory jurisdictional service on or notice to a person within this state, just so much does it fall short of preserving, in this state, to the nonresident citizen of the United States, the guarantees of equality of privileges and immunities; due process of law; and the equal protection of the law under the federal constitution.    Were the statute to provide that the using of the highways for motor-vehicle purposes would be deemed the appointment of the secretary of state as attorney or agent for personal service of process in any and all kinds of actions, contract as well as tort, it would present no logical distinction from the one we have here, but would only emphasize the inequality here created between resident and nonresident citizens of the United States.    Were a statute to provide that merely coming into this state, afoot, horseback, or by airship, would make similar attempted service valid, there would still be no difference in theory. The petitioner having the right, secured by the federal constitution, to freely come within and depart from this state, and this necessarily including the right to use the highways for that purpose, such right cannot be lessened, curtailed, or hampered in any manner substantially different from the restrictions, obligations, or liabilities placed upon residents. I think the ruling in *Flexner v. Farson,* 248 U. S. 289, 39 Sup. Ct. 97, is controlling here and contrary to the majority opinion.    See, also, 73 Univ. of Pa. Law Reg. p. 171.

I agree with the holding in the majority opinion that obedience to a subpœna in Illinois issued by a judicial officer there does not create, confer, or recognize, by such appearance, jurisdiction in a Wisconsin court whose title may happen to appear in the subpœna.    That, I think, is clearly

in accord with the doctrine in such cases as *Blair v. U. S.* 250 U. S. 273, 39 Sup. Ct. 468, holding that a witness required to give testimony before a grand jury is not entitled to refuse to answer upon the ground that the court and jury are without jurisdiction over the supposed offense under investigation (p. 282), although the identical statute there involved, namely, the federal corrupt practice act, was subsequently held unconstitutional in *Newberry v. U. S.* 256 U. S. 232, 41 Sup. Ct. 469.   See, also, *Howat v. Kansas,* 258 U. S. 181, 186, 42 Sup. Ct. 277.

I also agree with them that the provision in the statute limiting continuances to ninety days is discriminatory and therefore invalid.   But if such provision is discriminatory and unconstitutional because subjecting a nonresident defendant to a limitation not prescribed for a resident defendant, then I think the provisions here involved, attempting to make service on a state officer personal service on a nonresident defendant, is far more obnoxious and discriminatory and comes within the condemnation expressed in *Travis v. Yale & Towne Mfg. Co.* 252 U. S. 60, 78, 82, 40 Sup. Ct. 228.

For the above reasons, which seem to me so fundamentally superior to any considerations of desirability or convenience, I think the writ should issue.

The following opinion was filed June 20, 1927:

PER CURIAM.   On the authority of *Hess,* Plaintiff in error, *vs. Pawloski,* Defendant in error, decided by the Supreme Court of the United States May 16, 1927 (47 Sup. Ct. 632), the motion for rehearing is denied, with $25 costs.